**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| GLORIA JACKSON, as guardian and next friend of JAMEL JACKSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO: _____ |
| CHARLES GILLIS, former Baldwin County Sheriff's Deputy, and BILL MASSEE, Sheriff of Baldwin County, in their individual capacities, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the above-named Plaintiff and for her Complaint against

Defendants Charles Gillis and Bill Massee alleges as follows:

## INTRODUCTION AND PARTIES

1.  Plaintiff Gloria Jackson and her son Jamel Jackson are residents of the

State of Georgia.

2.  Defendant Charles Gillis was at all relevant times employed as a Baldwin

County Sheriff's Deputy.  Upon information and belief, Defendant Gillis resides in

Baldwin County, Georgia.

3.  Defendant Bill Massee was at all relevant times and remains to date the

Sheriff of Baldwin County, Georgia.

## JURISDICTION AND VENUE

4.  This Court has subject-matter jurisdiction over Plaintiff's claims pursuant

to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to the pleaded claims occurred in this district.

## RELEVANT FACTS

6.     At the time relevant to this Complaint, Jamel Jackson was 18 years old.

7.     Jamel Jackson is intellectually disabled and has significant limitations in intellectual functioning and adaptive behavior.  These limitations cause difficulty for Mr. Jackson in many everyday social and practical skills.  Throughout his life, he has received special education classes, speech therapy, counseling, psychotherapy, and psychiatric medications.

8.     The Probate Court of Baldwin County found that Jamel Jackson is an adult ward in need of a guardian and has appointed Plaintiff Gloria Jackson, Jamel's mother, to serve in that role.

9.     On October 9, 2017, deputy sheriffs from the Baldwin County (Ga.) Sheriff's Office responded to the home of Plaintiff Gloria Jackson and her son Jamel. Gloria Jackson called law enforcement that day because Jamel had become aggressive and argumentative with her over cooking food and cleaning his room.

10.     The first deputy to arrive spoke with Jamel and Gloria for approximately 10 minutes.  Gloria explained to the deputy that her son suffered from mental illness, was intellectually disabled, and was a patient at a local mental-health center.  She explained that she did not want Jamel to be arrested.

11.     At no point during that encounter was Jamel combative or violent with

the officer.  Jamel told the officer he did not want to be touched, and he passively held his hands behind his back so that he could not be handcuffed.  The officer called for backup and waited patiently with Jamel and his mother, in their small living room and kitchen, for that backup to arrive.

12.     Defendant Gillis arrived at Jamel and Gloria's house shortly after the initial deputy called for backup.  Nearly immediately, he attempted to restrain Jamel by force.  Jamel refused to let Defendant Gillis touch him and pulled away from Defendant Gillis's efforts to handcuff him.

13.     Another deputy advised that she intended to use a taser against Jamel Jackson, calling out "taser taser."  In response, Defendant Gillis pulled away from Mr. Jackson, who by that time had fallen down near a chair around the kitchen table.

14.     Defendant Gillis then drew out his service weapon, a handgun, and shot Jamel.  The bullet went through Jamel's arm, and fragments of the bullet remain to this day lodged in his side.

15.     Absolutely no cause existed for this use of deadly force against Jamel Jackson.  Mr. Jackson was unarmed, obviously impaired, and posed no threat of serious bodily injury or death to the deputies or anyone else.

16.     Immediately recognizing that his use of deadly force was unjustifiable, Defendant Gillis exclaimed "Oh my God!" and put his hands on top of his head right after he fired the shot.  He never attempted to claim that the shooting was justified.

17.     Within a week of the shooting, Defendant Gillis was placed on administrative leave. Defendant Massee offered a public apology for Defendant Gillis's

- 3 -

actions.  As a direct result of the unjustifiable shooting, Defendant Massee fired Deputy Gillis in January 2018.

**CAUSE OF ACTION**

I.    **CLAIM ONE:  42 U.S.C. § 1983 - FOURTH AMENDMENT - EXCESSIVE USE OF FORCE (Defendant Gillis)**

18.    Plaintiff re-alleges each and every allegation above as if fully set forth herein.

19.    The Fourth Amendment to the Constitution prohibits unreasonable seizures, including seizures effected by excessive use of force.

20.    Defendant Gillis violated Jamel Jackson's Fourth Amendment rights by employing excessive – indeed, lethal – force in the absence of any justifying circumstances during the course of an arrest.

21.    Defendant Gillis knew or should have known that he was employing lethal force in the absence of any justifying circumstances.  Among the facts that should have alerted Defendant Gillis to his unreasonable and excessive use of lethal force was the different location of the firearm he drew, the different heft of that firearm, and the different operation of that firearm as compared to a non-lethal taser.

22.    Defendant Gillis's use of excessive and lethal force and his actions leading up to that use of force were objectively unreasonable.

23.    Defendant Gillis's use of excessive and lethal force directly caused compensable damage to Plaintiff.

## II.    <u>CLAIM TWO</u>: 42 U.S.C. § 1983 - SUPERVISOR LIABILITY (Defendant Massee)

24.    Plaintiff re-alleges each and every allegation above as if fully set forth herein.

25.    Defendant Massee is responsible for training his deputies regarding proper use of force.

26.    Upon information and belief, Defendant Massee maintains a pattern and practice of failing to train his deputies regarding the proper use of force.

27.    Upon information and belief, Defendant Massee knew of a widespread history of use-of-force violations by Baldwin County law enforcement officers.  *See, e.g., Crowley v. Scott*, 2016 U.S. Dist. LEXIS 67008 (M.D. Ga. May 23, 2016) (pretrial detainee at Baldwin County jail knocked to ground by deputy sheriff); *James v. Massee*, 2015 U.S. Dist. LEXIS 90278 (M.D. Ga. Jul. 13, 2015) (officers denied prisoner food and sprayed prisoner with pepper spray without cause); *Wright v. Langford*, 562 F. App'x 769 (M.D. Ga. Apr. 2, 2014) (officer at Baldwin County jail fractured prisoner's wrist); *Barns v. Butch*, 2013 U.S. Dist. LEXIS 39631 (M.D. Ga. Feb. 22, 2013) (deputy sheriff slammed prisoner's head into floor); *Walker v. Hartgrove*, 2011 U.S. Dist. LEXIS 140141 (M.D. Ga. Nov. 2, 2011) (officers at jail beat handcuffed prisoner); *Jones v. Petty*, 2011 U.S. Dist. LEXIS 116716 (M.D. Ga. Sep. 6, 2011) (officers dragged prisoner down flight of stairs and slammed him face first into a glass panel).

28.    Despite this knowledge, Defendant Massee failed entirely to establish and enforce appropriate rules and training regarding the use of force, and thereby was

- 5 -

deliberately indifferent to the constitutional rights of Plaintiff and others who encountered his deputies.

29.     Upon information and belief, Defendant Massee maintains a pattern and practice of failing to train his deputies regarding encounters with individuals suffering from mental disability or illness.  His failure to establish and enforce appropriate policies constitutes deliberate indifference to the constitutional rights of Plaintiff and others who encounter his deputies.

30.     Defendant Massee's conduct directly caused the violation of Jamel Jackson's constitutional rights and resulted in compensable damage to him.

### PRAYER FOR RELIEF

Plaintiffs respectfully ask the Court for the following relief:

31.     Trial by jury.

32.     Judgment awarding damages to Plaintiff sufficient to compensate for all of the injuries caused by Defendants' unlawful conduct, including but not limited to past, present, and future medical expenses, past, present, and future physical and mental pain and suffering, loss of enjoyment of life, and permanent impairment.

33.     Judgment awarding punitive damages.

34.     Judgment awarding Plaintiff reasonable litigation costs and expenses, including attorneys' fees pursuant to 42 U.S.C. § 1988.

Date: September 27, 2019.          Respectfully submitted,

                                   SAVAGE, TURNER, DURHAM,
                                   PINCKNEY & SAVAGE


                                   By:  /s/ R. Brian Tanner
                                        Brent J. Savage
                                        Georgia Bar No.627450
                                        R. Brian Tanner
                                        Georgia Bar No. 697615

102 East Liberty Street, 8th Floor
Post Office Box 10600
Savannah Georgia 31412
Phone:  (912) 231-1140
btanner@savagelawfirm.net


                                   KEVIN GOUGH FIRM LLC

                                   By:  /s/ Kevin R. Gough
                                        Kevin R. Gough
                                        Georgia Bar No. 303210

P.O. Box 30357
Sea Island, Georgia 31561
kevingough.firm@gmail.com